Robert R. GOFFE, a citizen of the District of Columbia, Plaintiff,

v.

Stephen BLAKE, a citizen of Indiana, individually and as an officer and director of AMW, Inc., and as an officer, director, and owner of Avanti Motor Corporation, AMW, Inc., a corporation of the State of Delaware, and Avanti Motor Corporation, an Indiana corporation, Defendants.

Civ. A. No. 83–762–WKS.

United States District Court, D. Delaware.

March 27, 1985.

Richard R. Wier, Jr., Vernon R. Proctor, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., J. Michael Cavanaugh, Gary W. Christian, Graham & James, Washington, D.C., for plaintiff.

Michael D. Goldman, Potter, Anderson & Corroon, Wilmington, Del., Charles R. Donnenfeld, Lucinda J. Bach, Schwalb, Donnenfeld, Bray & Silbert, Washington, D.C., for defendants.

## OPINION

STAPLETON, Chief Judge:

This is a diversity action brought by plaintiff Robert R. Goffe ("Goffe") against defendants Stephen H. Blake ("Blake"), AMW, Inc. ("AMW-Delaware"), and Avanti Motor Corporation ("Avanti") asserting claims based on breach of contract, common law fraud, and breach of fiduciary duty. Following the filing of an amended complaint, defendants moved to dismiss. I denied the motion to dismiss with respect to AMW-Delaware and Avanti but held that venue was improper as to Blake. Thereafter, Goffe moved to transfer the case to the District of Columbia and defendants moved to transfer the case to the Northern District of Indiana. For the reasons set forth herein, I find that this case should be transferred to the District of Columbia.

## BACKGROUND

Plaintiff Goffe is a citizen and resident of the District of Columbia where he practices law, specializing in tax and securities matters. Defendant Blake is a resident of the Northern District of Indiana, although he was a resident of the District of Columbia prior to October, 1982. Blake is an officer, director, and owner of Avanti.

The background with respect to AMW-Delaware and Avanti is somewhat more complicated. AMW-Delaware was formed in 1981 allegedly as part of a plan to acquire Avanti Motor Corporation (a going concern manufacturing automobiles). Blake held stock in AMW-Delaware. On September 27, 1982, another corporation called AMW, Inc. was incorporated in Indiana ("AMW-Indiana"), and, on October 1, 1982, AMW-Delaware was merged into AMW-Indiana. In accordance with the merger agreement all outstanding shares of AMW-Delaware were then converted into shares of AMW-Indiana. At approximately the same time, AMW-Indiana purchased Avanti Motor Corporation. Thereafter, on November 1, 1982, AMW-Indiana formally was renamed Avanti Motor Corporation. As a result of these transactions, Blake became a stockholder of Avanti. Apparently, the merger agreement was not filed in Delaware after its approval, and consequently, AMW-Delaware continued to exist as a Delaware entity. However,

counsel has indicated that the certificate of merger has now been filed in Delaware, and as a result, AMW-Delaware no longer exists.

In general terms, Goffe alleges that Blake approached him in Washington, D.C. in January, 1981, to retain Goffe's services in connection with Blake's quest to acquire Avanti Motor Corporation. Following this meeting, Goffe claims that he entered into an oral agreement with Blake that he would help raise capital and perform other preacquisition services for Blake in return for an interest equal to Blake's in Avanti or any entity acquiring an interest in Avanti. Blake and Goffe also allegedly agreed that Goffe would be paid for his legal services out of investment capital, once the acquisition took place.

In September, 1981, Goffe claims that he and Blake decided to incorporate AMW-Delaware as a vehicle for acquiring Avanti Motor Corporation. As part of this plan, it was allegedly agreed upon that both Goffe and Blake would purchase 250 shares of the initial 1,000 share offering of AMW-Delaware. Goffe asserts that this agreement was memorialized in a Pre-Incorporation Agreement which was allegedly signed in October, 1981.

On December 17, 1981, AMW-Delaware was incorporated and on December 21, 1981, an organizational meeting was allegedly held in Washington, D.C. Goffe claims that at this meeting he and Blake were elected officers of AMW-Delaware and were issued stock in accordance with the Pre-Incorporation Agreement. However, on December 29, 1981, Blake allegedly informed Goffe that there had been a "foul-up" with the incorporation of AMW-Delaware and by March, 1982, all communications between Blake and Goffe had ended. Indeed, Goffe claims he was unable to locate or contact Blake thereafter. Only then did Goffe terminate the services that

he had allegedly been performing on a full time basis since January, 1981.

On October 28, 1983, Goffe initiated this action seeking, *inter alia,* specific performance of the Pre-Incorporation Agreement, damages caused by the defendants' breach of this agreement, damages resulting from being fraudulently induced to provide services in connection with Blake's efforts to acquire Avanti, and reimbursement in *quantum meruit* for those services thus provided. The defendants have denied virtually all of the material allegations contained in the complaint and the affidavits submitted by Goffe.

## DISCUSSION

Goffe has moved to transfer this action to the District of Columbia pursuant to 28 U.S.C. § 1406(a) which provides, as follows:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, *transfer such case to any district or division in which it could have been brought.*

(emphasis added).

By contrast, defendants have moved to transfer the case to the Northern District of Indiana pursuant to 28 U.S.C. § 1404(a) which provides, as follows:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division *where it might have been brought.*

(emphasis added).

The parties agree that under either statute, it is necessary to show that all defendants are subject to the *in personam* jurisdiction of the transferee court before transfer to that court can be properly effectuated. The defendants maintain, however, that this action cannot be transferred to the District of Columbia because Avanti is not subject to personal jurisdiction in that forum.[1] Goffe, on the other hand, argues

---

1. I do not understand the defendants to contend that the District of Columbia courts could not properly exercise personal jurisdiction over Blake. Indeed, defendants argue that "this ac-

tion arises solely from Blake's alleged activities in the District of Columbia prior to the acquisition of Avanti." Defendants' Opening Brief at 9. Moreover, as was previously noted, it does not

that Avanti's contacts with the District of Columbia are sufficient to render Avanti amenable to suit under the District of Columbia long-arm statute thereby allowing transfer to that forum.[2]

### A. The Standard To Be Applied

In *Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir.1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971), the Third Circuit Court of Appeals discussed the statutory requirement that a case be transferred only to a forum in which it could have been originally brought, commenting as follows:

> [A] transfer is authorized by the statute only if the plaintiff had an "unqualified right" to bring the action in the transferee forum at the time of the commencement of the action; i.e. venue must have been proper in the transferee district and the transferee court must have had power to command jurisdiction over all the defendants.... If there is a "real question" whether a plaintiff could have commenced the action originally in the transferee forum, ... it is evident that he would not have an unqualified right to bring his cause in the transferee forum.

*Id.* at 24. The court found that there was substantial doubt as to the validity of the then new long-arm statute of the state of the transferee forum, and hence, that plaintiff did not have an "unqualified right" to bring her suit in the transferee forum because personal jurisdiction over one of the defendants was questionable. *Id.* at 24–25. Therefore, if I find that there is a "real question" over whether Avanti is amenable to service of process in the District of Columbia, I must deny Goffe's motion to transfer the case to that forum.

### B. Bases For Personal Jurisdiction Over Avanti In The District Of Columbia

Plaintiff argues that Avanti is subject to personal jurisdiction in the District of Columbia under either the general "doing business" jurisdictional statute, D.C.Code Ann. § 13–334, or the District of Columbia "long-arm" statute, D.C.Code Ann. § 13–423. Plaintiff grounds this argument on both Avanti's contacts and actions with respect to the District of Columbia, and the contacts and actions of AMW-Delaware and Blake with respect to the District of Columbia which plaintiff asserts may be attributed to Avanti for purposes of personal jurisdiction.

### 1. Attribution of the Conduct of Blake and AWM-Delaware to Avanti for Purposes of Personal Jurisdiction

As a general proposition, actions and conduct of a constituent corporation may be attributed to the surviving corporation following a merger for purposes of determining the surviving corporation's amenability to personal jurisdiction for liabilities incurred by the constituent corporation. For example, in *Duris v. Erato Shipping, Inc.*, 684 F.2d 352 (6th Cir.1982), the lower court dismissed plaintiff's complaint on grounds, *inter alia*, that plaintiff had failed to establish *in personam* jurisdiction over the surviving corporation to a merger because the surviving corporation, as opposed to the constituent corporation, did not have sufficient business contacts in Ohio to bring it within the reach of that state's long-arm jurisdictional statute. On appeal, the Sixth Circuit reversed, finding that although the surviving corporation never had done any business in Ohio, its constituent corporation clearly had. Moreover, under Ohio law, the surviving corpo-

---

appear that AMW-Delaware remains in existence as a corporate entity over which personal jurisdiction could be exerted. In addition, however, defendants apparently concede that if AMW-Delaware were in existence, it would be subject to the jurisdiction of the District of Columbia courts.

**2.** The defendants concede that venue is proper in the District of Columbia. Likewise, although

Goffe in a footnote in his opening brief indicated that he does not concede that the case could have originally been brought in the Northern District of Indiana, he has not disputed in any meaningful way defendants' assertion both that in personam jurisdiction is available as to all the defendants and that venue is proper in that forum.

ration was liable "for all claims against the constituent corporation." *Id.* at 356. The court thus held that the plaintiff could gain personal jurisdiction over the surviving corporation merely by establishing Ohio contacts sufficient to exercise personal jurisdiction over the constituent corporation. "Any other ruling would allow corporations to immunize themselves by formalistically changing their titles." *Id.* The Supreme Court affirmed without addressing this aspect of the case. *Pallas Shipping Agency, Ltd. v. Duris,* 461 U.S. 529, 103 S.Ct. 1991, 76 L.Ed.2d 120 (1983).

Similarly, in *Cole v. Caterpillar Machinery Corp.,* 562 F.Supp. 179 (M.D.La.1983), the court ruled that where a successor corporation to a merger had no contacts with the forum state, it could still be subject to *in personam* jurisdiction without offending due process requirements since plaintiff's claim arose against the constituent corporation and that corporation had had significant contacts with the forum state. The court noted that as a result of the merger, the successor corporation had assumed both the liabilities and the assets of the constituent corporation. The court then found as follows:

> Since Americas [the surviving corporation] could have availed itself of the benefits of the forum in order to sue for monies owed its corporate predecessor, it seems only fair that Americas, deriving benefits from the forum should also be expected to answer for liabilities incurred by the alleged negligent actions of its predecessor.... Louisiana's courts were open for Americas to assert any claims it might have by virtue of its merger with Machinery [the constituent corporation]. Having available the benefits, Americas has a corresponding duty to answer for liabilities.

*Id.* at 180–81.

Likewise, in *Maryland National Bank v. Shaffer Stores Co.,* 240 F.Supp. 777 (D.Md.1965), the court held that personal jurisdiction could be properly asserted pursuant to the Maryland long-arm statute and the Due Process Clause of the Constitution over the surviving corporation to a merger for claims based on an agreement entered into by a constituent corporation. The court specifically rejected the argument advanced by the surviving corporation that since its *sole* contact with Maryland was as "the successor, by several corporate mergers, to an alleged obligor under a contract concededly made in Maryland", *id.* at 779, it would be a denial of due process to subject it to suit in Maryland under such circumstances. *See also Fehl v. S.W.C. Corp.,* 433 F.Supp. 939, 947 (D.Del.1977) ("personal jurisdiction ... [under Delaware law] may be assumed over a successor corporation, on the basis of acts of its predecessor, in cases where a merger or continuation has preserved the same corporate entity intact"), *reh'g denied,* 449 F.Supp. 48 (D.Del.1978).[3]

Defendants vigorously oppose the conclusion that the actions and conduct of a constituent corporation may be attributed to the surviving corporation of a merger for purposes of establishing *in personam* jurisdiction over such corporation asserting that, at least in this case, Delaware's Corporation Law mandates that suits arising out of liabilities of AMW-Delaware, the predecessor or constituent corporation to the merger, are to be brought in Delaware and only Delaware. Specifically, while defendants concede that under 8 Del. C. § 259(a) (1983), Avanti, as the surviving corporation to the merger, is subject to all the debts, liabilities, and duties of the constituent corporation, AMW-Delaware, they assert that 8 Del. C. § 252(d) (1983) limits where suits on such debts, liabilities, and duties can be filed to only Delaware, invoking the following statutory language:

> If the corporation surviving or resulting from the merger or consolidation is to be governed by the laws of the District of

---

**3.** In *Fehl v. S.W.C. Corp.,* Judge Wright was confronted with the issue of whether a successor corporation could be subject to personal jurisdiction on the basis of actions taken by a predecessor corporation where the predecessor corporation had sold to the successor all the assets relating to a specific line of business rather than merged into the successor.

Columbia or any state other than this State, it shall agree that it may be served with process in this State in any proceeding for enforcement of any obligation of any constituent corporation of this State....

8 Del. C. § 252(d) (1983). Defendants rely on *Cole v. National Cash Credit Association*, 18 Del. Ch. 47, 156 A. 183 (1931), as support for their interpretation of this section of the Delaware Corporation Law.[4]

█ I do not find defendants' contentions persuasive. The central thrust of both Section 252(d) of the Delaware Corporation Law, 8 Del. C. § 252(d) (1983), and *Cole v. National Cash Credit Association* is to ensure that there is at least one judicial forum available in which claims against a constituent or predecessor Delaware corporation can be brought. Contrary to defendants' position, there is nothing in these two authorities to indicate that Delaware is to be the *only* forum for asserting such claims. Consequently, the actions and conduct of AMW-Delaware may be attributed to Avanti for determining whether Avanti is subject to the jurisdiction of the District of Columbia courts.

█ With respect to whether the actions and conduct of Blake within the District of Columbia may be attributed to Avanti, it is clear that under District of Columbia law, the acts of an agent can be attributed to the agent's principal for purposes of asserting personal jurisdiction. D.C.Code § 13–423(a). *See Rose v. Silver*, 394 A.2d 1368, 1371–72 (D.C.1978), *reh'g denied*, 398 A.2d 787 (D.C.1979); *Daughtry v. Arlington County*, 490 F.Supp. 307 (D.D.C.1980); *Mandelkorn v. Patrick*, 359 F.Supp. 692 (D.D.C.1973). As the president and treasurer of AMW-Delaware, Blake had the power to act as AMW-Delaware's agent. Consequently, his conduct can be attributed to AMW-Delaware for purposes of personal jurisdiction. Since I have already found that AMW-Delaware's actions can likewise be attributed to Avanti, I conclude that to the extent Blake was acting as AMW-Delaware's agent, his actions can be attributed to Avanti for purposes of deciding whether Avanti is subject to the jurisdiction of the District of Columbia courts. Likewise, to the extent Blake was acting as Avanti's agent following the merger of AMW-Delaware into AMW-Indiana (Avanti), Blake's conduct can be directly attributed to Avanti for such purposes.

## 2. *The District of Columbia Long-Arm Statute*

Goffe asserts that Avanti is amenable to service of process in the District of Columbia under subsections (a)(1), (a)(3), and (a)(4) of the District of Columbia long-arm statute.[5] D.C.Code Ann. §§ 13–423(a)(1),

---

4. *Cole v. National Cash Credit Association* involved, *inter alia*, a suit by a New Jersey creditor to preliminarily enjoin the merger of the debtor Delaware corporation with another corporation. The creditor asserted that because the debtor corporation was licensed to do business in New Jersey, the creditor had the right to sue the debtor in New Jersey, a right or remedy which allegedly would be extinguished if the merger were consummated. Since the Delaware Corporation Law prohibited the impairment of rights or remedies by a merger, the creditor argued that a preliminary injunction was appropriate. While the Chancellor, in denying injunctive relief, did state that "[w]hen our [corporation] statute preserves remedies generally to creditors in consolidation and merger cases, it does not undertake to guarantee to them jurisdictions in which to assert the remedies," 156 A. at 187, he emphasized that he had great doubts "that the act of merging would

deprive the complainant of its right to a remedy in New Jersey." *Id.* at 186.

5. The District of Columbia long-arm jurisdictional statute provides in its entirety, as follows:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

(1) transacting any business in the District of Columbia;

(2) contracting to supply services in the District of Columbia;

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial

(a)(3), (a)(4). Subsection (a)(1) provides that "[a] District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's transacting any business in the District of Columbia." D.C.Code Ann. § 13–423(a)(1). The District of Columbia Court of Appeals has declared that this clause "permit[s] the exercise of personal jurisdiction over nonresident defendants to the extent permitted by the due process clause of the United States Constitution." *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 810–11 (D.C.1976) (en banc). See also *Hummel v. Koehler*, 458 A.2d 1187, 1190 (D.C.1983); *Smith v. Jenkins*, 452 A.2d 333, 336 (D.C. 1982); *Mouzavires v. Baxter*, 434 A.2d 988, 993 (D.C.1981) (en banc), *cert. denied*, 455 U.S. 1006, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982); *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty., Ltd.*, 647 F.2d 200, 204–205 (D.C.Cir.1981) (hereafter *"SFW v. Kaiser"*).

■ Generally, a determination as to whether a court may properly assert personal jurisdiction over a nonresident defendant involves an examination of both the statutory authority for extraterritorial service of process and due process limitations on such service. *Smith v. Jenkins, supra*, 452 A.2d at 336; *Mouzavires v.*

*Baxter, supra,* 434 A.2d at 992. However, it has been suggested that since the "transacting any business" provision of the District's long-arm statute, D.C.Code Ann. § 13–423(a)(1), has been found to be coextensive with the permissible bounds of due process, these two steps have been merged "into a single due process analysis." *Smith v. Jenkins, supra*, 452 A.2d at 336. While this may be a short-hand way of indicating that in most cases grounding *in personam* jurisdiction on subsection (a)(1) of the long-arm statute, D.C.Code Ann. § 13–423(a)(1), the required analysis will necessarily and primarily involve due process considerations, it is clear that the District of Columbia has not abandoned the requirement found in the long-arm statute that "jurisdiction of the court 'is restricted to claims arising from the particular transaction of business carried out in the District' ". *Beachboard v. Trustees of Columbia University*, 475 A.2d 398, 401 (D.C. 1984) (quoting *Berwyn Fuel, Inc. v. Hogan*, 399 A.2d 79, 80 (D.C.1979)). *See also Cockrell v. Cumberland Corp.*, 458 A.2d 716, 717 n. 2 (D.C.1983) ("The fact that appellee may have transacted business with other customers in the District of Columbia is of no help to appellant, for his claim must arise from the particular transaction on which he relies as a basis for jurisdiction"); D.C.Code Ann. § 13–423(b).

revenue from goods used or consumed, or services rendered, in the District of Columbia;
(5) having an interest in, using, or possessing real property in the District of Columbia;
(6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or
(7) marital or parent and child relationship in the District of Columbia if:
(A) the plaintiff resides in the District of Columbia at the time the suit is filed;
(B) such person is personally served with process; and
(C) in the case of a claim arising from a marital relationship:
(i) the District of Columbia was the matrimonial domicile of the parties immediately prior to their separation or
(ii) the cause of action to pay spousal support arose under the laws of the District of

Columbia or under an agreement executed by the parties in the District of Columbia; or
(D) in the case of a claim affecting the parent and child relationship:
(i) the child was conceived in the District of Columbia and such person is the parent or alleged parent of the child;
(ii) the child resides in the District of Columbia as a result of the acts, directives, or approval of such person; or
(iii) such person has resided with the child in the District of Columbia.
(E) notwithstanding the provisions of subparagraphs (A) through (D), the court may exercise personal jurisdiction if there is any basis consistent with the United States Constitution for the exercise of personal jurisdiction.
(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.
D.C.Code Ann. § 13–423 (1984 Supp.).

In the case at bar, plaintiff Goffe alleges, *inter alia*, that AMW-Delaware expressly and/or impliedly adopted at the corporation's organizational meeting held in the District of Columbia the Pre-Incorporation Agreement entered into between Goffe and Blake. By adopting this Agreement, Goffe asserts that AMW-Delaware became contractually bound to honor its terms including the provision whereby Goffe was to receive the same amount of stock in AMW-Delaware as Blake. Goffe contends that he never received the ownership interest in AMW-Delaware (and later Avanti) to which he was entitled under the terms of the Pre-Incorporation Agreement, and therefore, AMW-Delaware and consequently Avanti as the successor corporation is jointly and severally liable with Blake for breach of contract. Goffe supports this claim with his own sworn affidavits as well as copies of documents allegedly constituting the minutes of the organizational meeting, the Pre-Incorporation Agreement, the initial stock ledger of AMW-Delaware, and a stock certificate for 250 shares of AMW-Delaware.

■ While Blake has submitted affidavits controverting virtually all of Goffe's allegations, I am satisfied that Goffe has made at least a *prima facie* showing that his breach of contract claims arose out of the transaction of business by AMW-Delaware and Blake in the District of Columbia. *See Lott v. Burning Tree Club, Inc.*, 516 F.Supp. 913, 918 (D.D.C.1980); 2 J. Moore, *Moore's Federal Practice*, ¶ 4.41–1[3] at 4-471—4-472 (2nd Ed.1984) (burden to show the court a basis for the assertion of long-arm jurisdiction is met "by only a threshold *prima facie* showing that jurisdiction is conferred by the state long-arm statute; and, the pleadings and affidavits should be construed most strongly against the moving party.").

Moreover, I find that by conducting its first organizational meeting in the District of Columbia, AMW-Delaware's contacts with the District were such that it "does not offend 'traditional notions of fair play and substantial justice'", *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) and *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)), to require AMW-Delaware to defend claims arising out of that meeting in the District. By purposefully going to the District of Columbia to hold its organizational meeting, AMW-Delaware invoked the benefits and protection of the laws of the District. It is therefore not unfair to require AMW-Delaware to submit to the jurisdiction of the District of Columbia courts to defend a suit relating to some degree to that organizational meeting. This is all that is necessary to satisfy due process concerns. Since I have already determined that AMW-Delaware's conduct and activities may be attributed to Avanti without offending due process requirements, I find that *in personam* jurisdiction is available over Avanti in the District of Columbia.

Similarly, Goffe claims that he is entitled under a *quantum meruit* theory to compensation for legal and consulting services rendered for the benefit of both AMW-Delaware and Blake. Goffe asserts that these services were performed "almost entirely in the District of Columbia." Goffe Aff., ¶ 3 (Sept. 20, 1984). While the bulk of these services were allegedly performed before AMW-Delaware was incorporated, Goffe specifically avers that he provided services for both Blake and AMW-Delaware for approximately two months following the date of incorporation. Goffe Aff., ¶ 9 (Sept. 20, 1984).

In *Hummel v. Koehler*, 458 A.2d 1187, 1190–91 (D.C.1983), the court found that personal jurisdiction had properly been asserted over a nonresident defendant pursuant to subsection (a)(1) of the District of Columbia long-arm statute, D.C.Code Ann. § 13-423(a)(1), where the defendant had retained a District of Columbia law firm to provide legal services and the defendant had made three trips to the District in relation to these services. Similarly, in

*Mouzavires v. Baxter,* 434 A.2d 988 (D.C. 1981) (en banc), *cert. denied,* 455 U.S. 1006, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982), a plurality of the court[6] indicated that personal jurisdiction could be asserted pursuant to subsection (a)(1) of the District of Columbia long-arm statute, D.C.Code Ann. § 13–423(a)(1), over a non-resident defendant who merely telephoned a District of Columbia attorney to arrange for special assistance in a trademark and unfair competition case and thereafter corresponded and participated in additional telephone conversations with the attorney. *Cf. Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.,* 355 A.2d 808 (D.C.1976) (en banc) (acknowledging that even a small amount of business activity within the District of Columbia is sufficient to permit the conclusion that a nonresident defendant has transacted business in the District, but holding that where a plaintiff has a business relationship with the defendant, plaintiff cannot rely solely on his or her own activities in the District as a basis for asserting jurisdiction over that defendant).

By comparison, in the case at bar, Goffe allegedly provided legal and consulting services for both Blake and AMW-Delaware in the District. Moreover, AMW-Delaware had its first organizational meeting in the District during which Goffe avers he performed services for AMW-Delaware as the corporate secretary, and, in addition, AMW-Delaware maintained an office in the District during the time period in question. Goffe thus is not relying solely on his own actions in the District of Columbia as a basis for asserting jurisdiction over the defendants. Furthermore, I find that there is a sufficient nexus between AMW-Delaware's business activities in the District and Goffe's *quantum meruit* claim that his claim may be properly said to have "arisen out of" this business activity. Consequently, I conclude that *in personam* jurisdiction is available over AMW-Delaware pursuant to the "transacting any business' provision of the District of Columbia long-arm statute. Hence, as the successor corporation to AMW-Delaware, Avanti is subject to service of process in the District with respect to Goffe's *quantum meruit* claim.

Goffe also asserts in his amended complaint claims for common law fraud and breach of fiduciary duty. It appears that these claims are primarily if not entirely directed at Blake. However, to the extent that they include AMW-Delaware, I am satisfied that they are sufficiently related to the course of events which allegedly took place during the organizational meeting held in the District of Columbia that jurisdiction could be asserted over AMW-Delaware, and consequently Avanti, pursuant to subsection (a)(1) of the District of Columbia long-arm statute. D.C.Code Ann. § 13–423(a)(1).[7]

---

6. Four judges joined the plurality opinion, one judge concurred in the result, and four judges dissented.

7. I note that once personal jurisdiction has been established over a defendant pursuant to the District of Columbia long-arm statute, a plaintiff is entitled to assert claims relating to the transaction or conduct in question which rely on activity outside the District. As the court stated in *Cohane v. Arpeja-California, Inc.,* 385 A.2d 153, 158–59 (D.C.), *cert. denied,* 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978):

> The limitation in § 13–423(b) that the claim for relief must arise from the transaction of business in the District of Columbia is meant to prevent "the assertion of claims in the forum state that do not bear some relationship to the acts in the forum state relied upon to confer jurisdiction." *Malinow v. Eberly,*

322 F.Supp. 594, 599 (D.Md.1971). Once, however, the claim is related to acts in the District, § 13–423 does not require that the scope of the claim be limited to activity within this jurisdiction.

*See also Steinberg v. International Criminal Police Organization,* 672 F.2d 927, 931 n. 8 (D.C. Cir.1981) (under District of Columbia law, the concept of a cause of action or claim for relief should be "broadly construed" to cover an entire transaction to allow, when possible, an entire dispute to be settled in a single litigation). Therefore, the fact that certain aspects of Goffe's alleged relationship with defendants involved activities outside the District of Columbia should not preclude Goffe from fully litigating his claims in the District of Columbia courts in the event the case goes forward in that forum.

Therefore, I find that Avanti clearly is subject to the jurisdiction of the District of Columbia courts with respect to Goffe's claims pursuant to the "transacting any business" provision of the District of Columbia long-arm statute. Consequently, I need not address the other bases for jurisdiction raised by Goffe in his briefs and at oral argument. Since the parties do not dispute that venue is proper in the District of Columbia and I have determined that personal jurisdiction is available as to all the parties in that forum, I conclude that there is no "real question" that the action before me could have been brought originally in the District of Columbia.

### C. Transfer

■ Since I have found that this action could have been brought originally in the District of Columbia and it does not appear that the parties seriously dispute that the action could also have been brought originally in the Northern District of Indiana, I must now decide to which of these two forums the case should be transferred.

As was noted earlier, defendants have moved to transfer pursuant to 28 U.S.C. § 1404(a) while Goffe has moved to transfer under 28 U.S.C. § 1406(a). Since I previously ruled that venue in the District of Delaware was not proper as to Blake, it would appear that defendants rely on the wrong statutory provision since transfer under 28 U.S.C. § 1404(a) presupposes that venue in the transferor forum is proper while 28 U.S.C. § 1406(a) addresses the situation where, as here, venue in the transferor forum is improper. *See Van Dusen v. Barrack,* 376 U.S. 612, 634, 84 S.Ct. 805, 818, 11 L.Ed.2d 945 (1964) "[a]lthough both sections were broadly designed to allow transfer instead of dismissal, § 1406(a) pro-

vides for transfer from forums in which venue is wrongly or improperly laid, whereas, in contrast, § 1404(a) operates on the premise that the plaintiff has properly exercised his venue privilege."); *Devex Corp. v. General Motors Corp.,* 263 F.Supp. 17, 23 (D.Del.1967); 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3844 at 211 (1976) ("If venue is improper, transfer, if at all, must be under Section 1406(a). But a court that has subject matter jurisdiction and that is a proper venue may transfer under Section 1404(a)...."). Therefore, 28 U.S.C. § 1406(a) controls my decision as to where this case is to be transferred.

Under Section 1406(a), transfer to another forum must be in the "interest of justice." 28 U.S.C. § 1406(a). I am convinced that transfer to the District of Columbia satisfies this standard.[8] Quite simply, I find that the District of Columbia is a more appropriate forum for this case than the Northern District of Indiana. As I previously concluded in my earlier opinion, Goffe's claims arose in the District of Columbia. Moreover, Goffe has indicated that he expects to call at least sixteen residents of the District of Columbia to testify at trial, and he avers that he possesses "voluminous documentary evidence" pertaining to his relationship with Blake and AMW-Delaware which is located in the District of Columbia. Goffe Aff., ¶ 3(e) (Nov. 2, 1984). Finally, it appears that District of Columbia law will control the substantive aspects of Goffe's claims. It therefore makes sense to transfer the case to the District of Columbia where both counsel and the courts are familiar with the applicable law.[9]

---

**8.** Although 28 U.S.C. § 1406(a) allows a court to dismiss an action where venue is improper, I do not find such an alternative appropriate in this situation. The case is already almost one-and-a-half years old and is still in its preliminary stages. I see no reason to cause further delay by dismissing the action only to have plaintiff renew his suit in a different forum.

**9.** While it unquestionably would be more convenient for the defendants to litigate in the Northern District of Indiana than in the District of

Columbia, I find no compelling reasons as to why the case should be transferred there instead of the District of Columbia. Defendants argue that both significant amounts of pertinent documentary evidence and relevant witnesses are located in the Northern District of Indiana. Defendants indicate that these witnesses are "essential to establish the circumstances surrounding the acquisition of Avanti by AMW." Defendants' Opening Brief at 23. Although these circumstances may be somewhat relevant to

## CONCLUSION

For the foregoing reasons, I conclude that Goffe's motion to transfer this action to the District of Columbia should be granted and defendants' motion to transfer this action to the Northern District of Indiana should be denied.

Goffe's claims, I am not persuaded that this is a sufficient reason to transfer the case to the Northern District of Indiana since the critical issues of this litigation involve events which preceded the acquisition of Avanti by AMW-Indiana. As to the documentary evidence, defendants have not asserted that it could not be transported to the District of Columbia.